**Opinion filed June 11, 2015**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00124-CR

_____

## CHRISTOPHER MCGEE, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 7
Dallas County, Texas
Trial Court Cause No. F-1259266-Y**

### M E M O R A N D U M   O P I N I O N

Christopher McGee was indicted for aggravated robbery. The jury convicted him of the lesser included offense of robbery. Appellant pleaded "not true" to a prior conviction alleged for enhancement purposes. The jury found the enhancement allegation to be "true" and assessed his punishment at confinement for forty-five years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $5,500. In three issues on appeal, Appellant challenges the sufficiency of the evidence and alleges two instances of jury charge error. We affirm.

*Background Facts*

David Rosen, the manager of a Family Dollar store, testified that on August 18, 2012, he was talking with his assistant manager when they saw a man coming down an aisle with his pants full of merchandise. Rosen attempted to stop the man to retrieve the merchandise. Rosen stepped in front of him and said, "Just give me the merchandise back and you're on your way." Appellant refused to give the merchandise back, and Rosen testified that Appellant said, "Don't touch me. Don't mess with me." Rosen then said that Appellant pushed his way toward the exit door. Rosen attempted to grab Appellant's shirt and hold him back to retrieve the merchandise. A surveillance video depicted Appellant leaving the store with the items of merchandise in his pockets.

Rosen followed Appellant outside the store and around the building. Rosen testified that Appellant "lifted up his shirt and showed [Rosen] a knife." Rosen said that it looked like a steak knife and that "it was stuffed in the front of his pants." Rosen then backed away as he "was afraid [Appellant] might do something" like "stab me and hurt me."

Rosen testified that he called 911 and watched Appellant walk away from the store. Rosen gave a description of Appellant to the dispatcher and the direction that Appellant was walking. Officer Patricio Zamarripa of the Dallas Police Department stopped to speak with Rosen about Appellant shortly after Appellant walked away. Officer Zamarripa was able to locate Appellate a short distance from the store. Officer Zamarripa arrested Appellant and returned with him to the store where Rosen identified Appellant.

*Analysis*

In his first issue, Appellant challenges the legal sufficiency of the evidence supporting his conviction for robbery. We review a sufficiency of the evidence issue, regardless of whether it is denominated as a legal or factual claim, under the

standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

"A person commits robbery if, in the course of committing theft, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Boston v. State*, 410 S.W.3d 321, 322 n.1 (Tex. Crim. App. 2013); *see* TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011).[1] "A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon." *Boston*, 410 S.W.3d at 322 n.1; *see* PENAL § 29.03(a)(2). Thus, the only additional element that elevated the charged offense to aggravated robbery was the use or

---

[1]A person may also commit robbery by intentionally, knowingly, or recklessly causing bodily injury to another while in the course of committing theft. PENAL § 29.02(a)(1).

exhibition of a deadly weapon because this is the only difference between the offense that was charged and the lesser included offense of robbery as set out in the court's charge.

The application paragraph in the court's charge was premised on the allegation that Appellant intentionally or knowingly threatened or placed Rosen in fear of imminent bodily injury or death. Appellant asserts that the evidence was insufficient to establish that he threatened or placed Rosen in fear of imminent bodily injury or death. He contends that, "[w]hen the jury acquitted Appellant of aggravated robbery[,] the knife was out of the case." Appellant is essentially asserting that the jury rejected Rosen's testimony that Appellant threatened him with a knife. We disagree with this conclusion. The jury's rejection of the aggravated robbery charge only constitutes a determination that the evidence did not establish that a deadly weapon was used or exhibited. In other words, the jury may very well have concluded that Appellant threatened Rosen with a knife but that the knife was not a deadly weapon. A knife is not considered a deadly weapon per se. *See Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). In this regard, defense counsel made the following argument to the jury during closing argument:

> A deadly weapon is anything manifestly designed or adapted for the purpose of inflicting death or serious bodily injury. What we've heard is a handle of a steak knife. So obviously we're not dealing with that aspect of the definition.
>
> Or, finally, anything in the manner of its use or intended use, is it capable of causing death or serious bodily injuries. So you have to adapt that definition to the circumstances in question and then decide, even if you believe there was a knife, if that rose to the level of use or exhibition of a deadly weapon under the circumstances of this case.

Rosen testified that he pursued Appellant to retrieve the stolen merchandise. He then saw the handle of the knife tucked inside Appellant's pants. Rosen said that, "even if he hadn't showed me the knife, I wouldn't have fought him." Rosen

4

stated that he was afraid that Appellant might stab him and hurt him. A person can commit robbery by placing another in fear of imminent bodily injury. This is a passive element when compared to the dissimilar, active element of threatening another. *Williams v. State*, 827 S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). Under the "places another in fear" language, the factfinder may conclude that an individual perceived fear or was placed in fear in circumstances where no actual threats were conveyed by the accused. *Id.*; *see Ex parte Denton*, 399 S.W.3d 540, 551 (Tex. Crim. App. 2013) ("Under the 'placed in fear' language in section 29.02 of the Texas Penal Code, the factfinder may conclude that an individual perceived fear or was 'placed in fear,' in circumstances where no actual threats were conveyed by the accused."). Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Appellant committed robbery by either threatening Rosen or placing Rosen in fear of imminent bodily injury or death. We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court erred when it failed to limit the definitions of intentionally and knowingly to the pertinent conduct elements of the offense of aggravated robbery. In his brief, Appellant directs his challenge to the charged offense of aggravated robbery. However, the jury did not convict Appellant of aggravated robbery. Accordingly, we will review the provisions of the court's charge pertaining to the lesser included offense of robbery in our consideration of Appellant's second issue.

A claim of jury charge error is reviewed using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). Our first duty in analyzing a jury charge issue is to decide whether error exists. *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). If error exists, we must determine whether the

error caused sufficient harm to warrant reversal. *Ngo*, 175 S.W.3d at 743–44. When, as in this case, the error was not objected to, reversal is proper only if the error caused actual, egregious harm to the defendant. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015); *Ngo*, 175 S.W.3d at 743–44. "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). Actual harm is established when the erroneous jury instruction affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Id.* (citing *Almanza*, 686 S.W.2d at 171). When assessing harm based on the particular facts of the case, we consider the entire jury charge; the state of the evidence, including contested issues and the weight of the probative evidence; the parties' arguments; and all other relevant information in the record. *Arrington*, 451 S.W.3d at 840; *Cosio*, 353 S.W.3d at 777. The *Almanza* analysis is fact specific and is done on a "case-by-case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

The trial court included the following definitions of "intentionally" and "knowingly" in the charge:

> A person acts intentionally, or with intent, with respect to [the] nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct, when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*See* PENAL § 6.03(a), (b). Appellant contends that these definitions of the culpable mental states should have been limited to the pertinent conduct elements to which

they applied. Appellant contends that a correct jury charge would have included the following instructions pertaining to the culpable mental states:

> The following definition applies to the mental state in causing or placing another in fear of bodily injury: A person acts intentionally, or with intent with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
>
> The following definition applies to the mental state in unlawfully appropriating property: A person acts intentionally, or with intent with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct.
>
> The following definition applies to the mental state in committing robbery in the course of committing theft: A person acts knowingly, or with knowledge with respect to the nature of his conduct or that the circumstances exist.[2]

We conclude that the court's charge did not erroneously instruct the jury on the culpable mental states applicable to this case.

There are three conduct elements that may be involved in an offense, the nature of the conduct, the result of the conduct, and the circumstances surrounding the conduct. *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). An offense may contain any one or more of these conduct elements that alone or in combination form the overall behavior which the legislature has intended to criminalize, and it is these essential conduct elements to which a culpable mental state must apply. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). Thus, the culpable mental state definitions in the charge must be tailored to the specific conduct elements of the offense. *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). A trial court errs when it fails to limit the definitions of the culpable mental states to the conduct element or elements of the offense to which

---

[2]We assume that Appellant's omission of the culpable mental state of "knowingly" from the first two paragraphs and his omission of "intentionally" from the third paragraph was an oversight.

7

they apply. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Cook*, 884 S.W.2d at 491.

In order to obtain a conviction for robbery, the State was required to prove that, in the course of committing theft, Appellant intentionally or knowingly threatened or placed Rosen in fear of imminent bodily injury or death. PENAL § 29.02(a)(2). To establish that Appellant committed "theft," the State was required to prove that he unlawfully appropriated property with the intent to deprive the owner of the property. PENAL § 31.03(a) (West Supp. 2014). The phrase "unlawfully appropriate[d]" in the statutory definition of theft refers to the nature of the conduct. *Fields v. State*, 966 S.W.2d 736, 739 (Tex. App.—San Antonio 1998), *rev'd on other grounds*, 1 S.W.3d 687 (Tex. Crim. App. 1999); *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.). Threatening or placing another in fear of imminent bodily injury or death refers to the result of the conduct. *Garza v. State*, 794 S.W.2d 497, 500–01 (Tex. App.—Corpus Christi 1990, pet. ref'd). Finally, threatening or placing another in fear of bodily injury "in the course of committing theft" refers to the circumstances surrounding the conduct. PENAL § 29.02(a); *Fields*, 966 S.W.2d at 739; *Ash*, 930 S.W.2d at 195. Accordingly, Appellant is correct in asserting that the offense of robbery at issue in this case contained all three conduct elements. *Garza*, 794 S.W.2d at 500–01; *see also Barnes v. State*, 56 S.W.3d 221, 234 (Tex. App.—Fort Worth 2001, pet. ref'd), *abrogated on other grounds by Bell v. State*, 169 S.W.3d 384, 398–99 (Tex. App.—Fort Worth 2005, pet. ref'd); *Ash*, 930 S.W.2d at 195.

Appellant focuses his argument on the element of causing or placing another in fear of imminent bodily injury or death. As noted previously, this is a "result of conduct" element. Appellant contends that, "[h]ad the [t]rial [c]ourt limited the definitions of intentionally and knowingly to the applicable conduct elements[,] the jury would have concluded that Appellant's words did not result in placing

Mr. Rosen in fear of imminent bodily injury or death so as to facilitate the unlawful appropriation." We disagree.

The application paragraph of the court's charge provided as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 18th day of August, 2012, the defendant, CHRISTOPHER MCGEE, did unlawfully then and there while in the course of committing theft and with intent to obtain or maintain control of the property of the complainant, DAVID ROSEN, did then and there intentionally or knowingly threaten or place DAVID ROSEN in fear of imminent bodily injury or death, or you have a reasonable doubt thereof, that the defendant did not then and there use or exhibit a deadly weapon, to-wit: a knife, then you will find the defendant guilty of robbery.

In this paragraph, the mental states "intentionally or knowingly" directly modify the result of the conduct (threatening or placing Rosen in fear of imminent bodily injury or death). Thus, the application paragraph correctly limited the culpable mental states on the "result of conduct" element. Additionally, the definitions of "intentionally" and "knowingly" were preceded with the following instruction:

> Our law provides that a person commits the offense of robbery if, in the course of committing theft, as that term is hereinafter defined, and with intent to obtain and maintain control of property of another, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[3]

This provision also limited the culpable mental states with respect to the "result of conduct" element. Accordingly, when read as a whole, the court's charge correctly limited the culpable mental states pertaining to the "result of conduct" element. However, even if we assume that the court's charge was erroneous, Appellant must show egregious harm to obtain a reversal.

---

[3]We note that this instruction in the court's charge is very similar to the language recently used by the Court of Criminal Appeals in *Boston* to define the offense of robbery. 410 S.W.3d at 322 n.1.

Appellant contends that he was harmed by the alleged charge error because, "[h]ad the [t]rial [c]ourt limited the definitions of intentionally and knowingly to the applicable conduct elements[,] the jury would have concluded that Appellant's words did not result in placing Mr. Rosen in fear of imminent bodily injury or death so as to facilitate the unlawful appropriation." He bases this argument on the contention that "Mr. Rosen testified he feared imminent bodily injury or death only because of the use or exhibition of the knife and the jury found against the State on this fact." As noted previously, we disagree with Appellant's contention that the jury's rejection of the aggravated robbery charge constituted a determination that Appellant did not use or exhibit a knife.

At a minimum, the application paragraph tended to limit the culpable mental states to the applicable conduct elements, including the "result of conduct" element that Appellant challenges. The facts in this case are not particularly complicated. The evidence offered at trial included a store surveillance video depicting Appellant. Rosen testified that he confronted Appellant and "told him I was going to call the police, give us our merchandise back, and [Appellant] lifted up his shirt and showed me a knife and I backed off." Rosen testified that he was afraid he would be injured or killed because of Appellant's intentional and knowing conduct. Additionally, the offense of robbery at issue in this case included all three conduct elements. Thus, the jury was not instructed about a conduct element that did not apply to the case. We conclude that any error in the trial court's charge was not so egregious that Appellant suffered actual harm or did not receive a fair trial. We overrule Appellant's second issue.

In his third issue, Appellant argues that the trial court erred when it failed to give the correct parole instruction as required by Article 37.07, section 4 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4 (West Supp. 2014). Article 37.07, section 4 requires that the jury instructions in the

punishment charge contain information on parole law. *See Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007). This instruction explains generally the concepts of good conduct time and parole, states the defendant's eligibility for parole in terms of calendar years or sentence portion, and states that no one can predict whether parole or good time might be applied to the defendant. *See Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). On appeal, we presume the jury followed these instructions as given. *Id.*

The court's charge provided as follows:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed, *without consideration of any good conduct time he may earn*. Eligibility for parole does not guarantee that parole will be granted.

(Emphasis added). Appellant's complaint focuses on the italicized portion of the above-quoted provision. He contends that the correct instruction is contained in Article 37.07, section 4(c), which reads as follows:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served *plus any good conduct time earned* equals one-fourth of the sentence imposed. Eligibility for parole does not guarantee that parole will be granted.

(Emphasis added). The State responds that the correct instruction is contained in Article 37.07, section 4(b), which reads as follows:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served *plus any good conduct time earned* equals one-fourth of the sentence imposed or 15 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

(Emphasis added). We agree with the State's position that the instruction found in Article 37.07, section 4(b) should have been given to the jury because of the prior

conviction that had been alleged for enhancement purposes. *See* CRIM. PROC. art. 37.07, § 4(b) (to be used when a prior conviction has been alleged for enhancement under Section 12.42(b) of the Penal Code); PENAL §§ 12.42(b), 29.02(b). Accordingly, the instruction given by the trial court was erroneous because it instructed the jury that good conduct time would not be considered in determining Appellant's eligibility for parole.[4]

Appellant contends that the language set out in the provisions of Article 37.07, section 4 is mandatory and that the failure to use the correct instruction is "always harmful . . . without further analysis." We disagree. Unobjected-to error in the court's charge regarding the defendant's eligibility for parole is subject to review under the "egregious harm" analysis set out in *Almanza*. *Igo v. State*, 210 S.W.3d 645, 646–47 (Tex. Crim. App. 2006). We conclude that Appellant did not suffer egregious harm from the error in the court's charge. If anything, the error was more likely beneficial to Appellant rather than harmful because the error lessened the possibility that the jury gave Appellant a harsher sentence to offset the effect of good conduct time on his parole eligibility.

The prosecutor made no reference to parole eligibility during her closing argument at the punishment phase. Instead, she focused on Appellant's lengthy criminal record in seeking a harsher sentence. Defense counsel also made no reference to parole eligibility during his closing argument. Additionally, the trial court, in its charge, correctly instructed the jury as follows after the erroneous instruction:

> It cannot be accurately predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

---

[4]The phrase "without consideration of any good conduct time [the defendant] may earn" is found in Article 37.07, section 4(a), which applies to very serious crimes.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See* CRIM. PROC. art. 37.07, § 4(b). These instructions were mitigating and curative of the erroneous instruction because they instructed the jury that one cannot predict how parole law and good conduct time might be applied to Appellant. Further, the jury was explicitly instructed that, although it could consider generally the existence of parole and good conduct time, it could not apply that to Appellant specifically. *See Igo*, 210 S.W.3d at 647 (parole instruction that contained standard curative language admonishing jury not to consider extent to which parole law might be applied to defendant was factor mitigating against finding of egregious harm). We presume that the jurors understood and followed the court's instructions in the jury charge absent evidence to the contrary. *Luquis*, 72 S.W.3d at 366. There is no evidence in the record to rebut the presumption that the jury followed the instruction not to consider how good conduct time or parole law might be applied to Appellant. Accordingly, we cannot conclude that the punishment charge error affected the very basis of the case, deprived Appellant of a valuable right, or vitally affected a defensive theory. The record does not show that the erroneous parole instruction egregiously harmed Appellant. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

June 11, 2015                                                              JOHN M. BAILEY

Do not publish. *See* TEX. R. APP. P. 47.2(b).                 JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

13