

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1023-12

---

**RONALD GLEN BOSTON, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### HAYS COUNTY

---

**HERVEY, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

Appellant, Ronald Glen Boston, was found guilty of aggravated robbery and was

sentenced to fifty-five years' imprisonment. The Third Court of Appeals affirmed the

judgment of the trial court, and Appellant filed a petition for discretionary review. *Boston*

*v. State*, 373 S.W.3d 832 (Tex. App.—Austin 2012, pet. granted). We granted review to

determine whether the Third Court of Appeals erred when it held that the victim was

threatened or placed in fear of imminent bodily injury or death when the evidence showed

that no threat was perceived by the victim. Because we conclude that a rational jury could have inferred that the victim was threatened and placed in fear, we will affirm the judgment of the court of appeals.

## FACTS

The victim of the crime, Rosalee Johnson, was an eighty-three year-old owner of, and clerk, at a Shell Super Stop in San Marcos, Texas. At the time of the aggravated robbery,[1] Johnson was working at the register and an employee was stocking the back room. Appellant entered the store with Jacob Hemphill. Hemphill went to the coffee station in the store. Appellant went to the counter and distracted Johnson by asking about different types of cigarettes and cigars for sale, forcing Johnson to repeatedly turn around. He also delayed the payment process by searching his pockets for money for an extended period of time and then dropping coins on the ground. After Appellant completed his purchase, he walked towards Hemphill and the coffee station. Once the last customer left, Hemphill approached the counter with a soda and coffee. He set the soda and coffee on the counter by the register, pulled out money, and handed the money to Johnson to pay for his purchase. After handing Johnson the money, Hemphill reached into one of his pockets and pulled out a firearm, which he dropped on the floor. Appellant walked by and looked at the firearm but did not pick it up. Hemphill then picked up the firearm, briefly pointed

---

[1]A person commits robbery if, in the course of committing theft, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE § 29.02(a)(2). A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. *Id.* § 29.03.

it at the clerk, and set it on the counter pointed at the clerk. Johnson, however, did not see the firearm and rang up the sale of the soda and coffee. When the register was open, Hemphill reached over the counter and took money from the cash register with both hands. The clerk grabbed his hands to stop him, but he pulled away. Leaving the soda and coffee, Hemphill grabbed his firearm, and Appellant and Hemphill ran out of the store together. Johnson yelled to the other employee in the back, "I've been robbed, please come and call the police[,]" and she ran outside after Appellant and Hemphill. The other employee called the police.

At trial, Johnson testified that she did not realize that Hemphill had a firearm until she saw the video of the robbery. She also testified that she was "very upset" and "shocked" during the robbery. When asked if Appellant threatened her, she stated that the robbers "didn't say anything." When asked if she perceived Hemphill's actions as threatening, Johnson stated that putting a firearm on the counter is threatening behavior, but she conceded that she never saw the firearm. She also testified that, during the robbery, she feared that she could be injured, perhaps seriously, and that she would not have run outside after Appellant and Hemphill if she knew that they had a firearm.

## PROCEDURAL HISTORY

Under the law of parties, Appellant was charged with, and convicted of, aggravated robbery. With two enhancements, his sentence was assessed at fifty-five years' confinement in the Correctional Institutions Division of the Texas Department of

Criminal Justice.

On appeal, Appellant made two arguments regarding sufficiency of the evidence relevant to the disposition of this case. First, Appellant argued that the evidence was insufficient to support Appellant's conviction for aggravated robbery because there was no evidence that Appellant threatened Johnson or placed her in fear of imminent bodily injury or death since she never saw the firearm. *See Boston*, 373 S.W.3d at 836. Second, Appellant asserted that, because Johnson did not see the firearm, there was insufficient evidence adduced at trial to support a deadly-weapon finding. *Id.* The court of appeals rejected both of these arguments and affirmed the judgment of the trial court. *Id.* at 838, 840. With respect to the evidence supporting the element of "threatens" or "places a person in fear," the court reasoned that a victim may be threatened or placed in fear even if the victim does not see a firearm, and that the victim need not perceive the threat; the only requirement is that the defendant engage in threatening conduct. *See id.* at 840; *see also Olivas v. State*, 203 S.W.3d 341, 345–46 (Tex. Crim. App. 2006). The court of appeals went on to hold that the act of Hemphill placing the firearm on the counter was sufficient conduct, under the law of parties, to establish the aggravated element of using or exhibiting a deadly weapon as to Appellant. *Boston*, 373 S.W.3d at 840.

We granted review to answer whether "[t]he Court of Appeals erred when it held that the victim was threatened or placed in fear of imminent bodily injury or death when the evidence showed that no threat was perceived by the victim."

## ARGUMENTS OF THE PARTIES

Appellant argues that the court of appeals erred when it held that Johnson was threatened or placed in fear of imminent bodily injury or death because the evidence showed that no threat was perceived by Johnson. Specifically, Appellant contends that the question of whether a victim must perceive a threat to prove the element of "threatens" in a robbery case has not yet been decided, and Appellant asserts that both *Landrian v. State*, 268 S.W.3d 532 (Tex. Crim. App. 2008) and *Olivas v. State*, 203 S.W.3d 341 (Tex. Crim. App. 2006) dealt with the issue of assault-by-threat, not robbery-by-threat and, thus, do not directly address the issue at hand. Appellant also reads a key section of our opinion in *Howard v. State*, 333 S.W.3d 137 (Tex. Crim. App. 2011), as defining the difference between "threatening" and "placing another in fear" as a distinction between explicit and implicit threats respectively, rather than the victim perceiving the threat.[2]

---

[2]*Howard*, 333 S.W.3d at 139. Appellant cites the following excerpt from this Court's opinion in *Howard*:

> The plain language of the statute encompasses not just explicit threats, but whatever implicit threats may lead to the victim being placed in fear. So long as the defendant's actions are "of such nature as in reason and common experience is likely to induce a person to part with his property against his will," any actual or perceived threat of imminent bodily injury will satisfy this element of the offense.

*Id.* (footnotes omitted). The first sentence of this excerpt discusses the breadth of conduct under Section 29.02(a)(2) of the Texas Penal Code that could lead to a person being placed in fear. Thus, we concluded in the next sentence that "any actual or perceived threat of imminent bodily injury will satisfy [the place-another-in-fear] element of the offense." This interpretation is supported by our statement later in *Howard* that "robbery-by-placing-in-fear does not require that a defendant know that he actually places someone in fear, or know whom he actually places in fear. Rather, it requires that the defendant is aware that his conduct is reasonably certain to place someone in fear, and that someone actually is placed in fear." *Id.* at 140.

Lastly, Appellant argues that the standard developed in *Cranford v. State*, 377 S.W.2d 957, 959 (Tex. Crim. App. 1964) and *Green v. State*, 567 S.W.2d 211, 213 (Tex. Crim. App. [Panel Op.] 1978), requires the victim to perceive a threat and to be placed in fear as a result of a robber's actions. As the victim did not perceive a threat in this case, and was not placed in fear as a result of Appellant or Hemphill's actions, Appellant argues that the court of appeals decision should be reversed and remanded.

The State argues that Appellant is not entitled to relief because Appellant threatened Johnson, the threat was perceived by Johnson, and Johnson was placed in fear because of Appellant's threatening conduct. First, the State asserts that there is a distinction between "threatens" and "places another in fear" under the robbery statute, and it contends that, by placing the firearm on the counter, Hemphill created an implicit threat even if the action did not place the victim in fear. To support this argument, the State cites our discussion in *Howard* regarding the culpable mental state "knowingly." *Howard*, 333 S.W.3d at 139–40.

Second, the State acknowledges our holding in *Cranford* that, when a victim is placed in fear, the fear must arise from the actions of the defendant and not the timidity of the victim. However, the State asserts that Johnson was placed in fear because she was afraid of being injured during the robbery because of Hemphill's threatening actions, not because of any timidity related to her age or physical characteristics. *Cranford*, 377 S.W.2d at 959.

**DISCUSSION**

A person commits robbery if, in the course of committing theft, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE § 29.02(a)(2). A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. *Id.* § 29.03. A deadly weapon is defined, in relevant part, as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." *Id.* § 1.07(17)(A).

To resolve the question presented, we must first construe the robbery statute. Statutory construction is a question of law and is reviewed de novo. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). The goal of a statutory construction analysis is to "effectuate the collective intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). To ascertain that collective intent or purpose, we first look to the plain language of the statute. *Swearingen v. State*, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010). When interpreting the plain language of a statute, "each word, phrase, clause, and sentence in a statute should be given effect if reasonably possible." *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009) (quoting *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)). If however, the plain language of the statute would lead to absurd results the Legislature could not have intended or is ambiguous, then we may consult extra-textual sources to ascertain the collective intent or purpose of the enacting legislators. *Swearingen*, 303

S.W.3d at 732.

Because we have reviewed similar issues in prior decisions, it is helpful to review those cases now. The first case involves robbery-by-placing-in-fear and the second assault-by-threat.

In *Howard v. State*, 333 S.W.3d 137 (Tex. Crim. App. 2011), the appellant was charged with, and convicted of, aggravated robbery after entering a convenience store and robbing the on-duty clerk. *Id.* at 137–38. The clerk was in an office in the back of the store and saw the appellant enter with his rifle through a closed-circuit security system. *Id.* at 138. The clerk locked the door and called the police. *Id.* The appellant could not open the register, but he stole the clerk's wallet and some money under the register. *Id.* On appeal, the question was whether the offense of aggravated robbery requires interaction between the accused and the victim. *Id.* We held that

> robbery-by-placing-in-fear does not require that a defendant know that he actually places someone in fear, or know whom he actually places in fear. Rather it requires that the defendant is aware that his conduct is reasonably certain to place someone in fear, and that someone actually is placed in fear.

*Id.* at 140. Our holding turned on our interpretation of the latter phrase of the statutory subsection, "places another in fear," and not the former (and more relevant to this case), "threatening . . . imminent bodily injury." We concluded that there was sufficient evidence in the record to infer that the appellant was aware that his actions would be reasonably certain to place the victim in fear of imminent bodily injury or death, and that the fact that the appellant did not see the victim—who testified that he was

frightened—was irrelevant to our analysis.

In *Olivas v. State*, 203 S.W.3d 341 (Tex. Crim. App. 2006), the appellant was charged, in relevant part, with aggravated-assault-by-threat when the appellant followed the victim and shot at her truck. Challenging the conviction on appeal, the appellant argued that "the State failed to prove the element of 'threaten with imminent bodily injury.'" *Id.* at 343. Specifically, he alleged that the victim had not been "threatened" because she did not perceive the threat at the time that the offense occurred (i.e., that the appellant was shooting at her). *Id.* at 343–44. In our analysis, we first noted that the ordinary definitions of "threat" and "threatening" were ambiguous because they "could indicate either an act that is communicated by the actor to another, regardless of whether it is successfully perceived by the intended recipient, or one that is successfully communicated to the intended recipient." *Id.* at 346. We then compared the offense to other Texas Penal Code offenses using "threaten" as an element—aggravated robbery and terroristic threat—and concluded that both statutes

> imply that one can threaten without *necessarily* placing another in fear of imminent bodily injury. A logical inference from this is that "threatening," as used in the Penal Code, does not require that the intended victim perceive or receive the threat, but "placing another in fear of imminent bodily injury does."

*Id.* Although we analyzed the question of whether a threat must be perceived to sustain a conviction for robbery, we declined to reach the ultimate issue because we determined that there was sufficient evidence in the record to infer that the victim did in fact perceive

the threat. *Olivas*, 203 S.W.3d at 349. In reaching that conclusion, we noted that, although the victim "did not instantaneously realize that [the] appellant had fired shots at her, she knew that [the appellant] had done *something* threatening to her. And she was frightened." *Olivas*, 203 S.W.3d at 350 (emphasis in original). Moreover, we stated that "there is no statutory requirement that a victim must instantaneously perceive or receive a threat of imminent bodily injury as the actor is performing it." *Id.* We also noted that, although the victim "did not comprehend that she was being shot at as [the] appellant fired at her car," her "realization moments later of what [the appellant] had done nonetheless placed her in great fear." *Id.* at 350–51.

Although the question presented for our review assumes that the victim did not perceive a theat,[3] we disagree. Webster's New College Dictionary defines the word, "perceive" as, "1. To become aware of directly through the senses . . . 2. To take notice of . . . [or] 3. To achieve understanding of." WEBSTER'S II: NEW COLLEGE DICTIONARY 815 (1999). Under these definitions, based on our analysis in *Olivas*, and based on our review of the record in this case, there was sufficient evidence for a rational jury to infer that Hemphill threatened Johnson by his actions, that Johnson perceived the threatening behavior based on her testimony at trial, and that Johnson was placed in fear of imminent bodily injury because of Hemphill's threatening behavior.

---

[3]The ground for review stated, "The Court of Appeals erred when it held that the victim was threatened or placed in fear of imminent bodily injury or death when the evidence showed that no threat was perceived by the victim."

When Johnson opened the register to make change for Hemphill's purchase of a soda and coffee, Hemphill reached over the counter and took all of the money out of the register.[4] While Johnson testified that she did not see Hemphill's firearm during the robbery, brandishing a firearm is not the only way in which a person can be threatened or placed in fear in accordance with the statute. We believe that Hemphill's conduct in reaching over the counter and taking money from the cash register was threatening because his actions were "a menacing indication of (something dangerous, evil, etc.)."[5] This conclusion is supported by Johnson's testimony that she feared that she could have been injured during the robbery and by her almost immediate realization that she had just been robbed—"I've been robbed, please come and call the police." We hold that the evidence in this case is sufficient to sustain Appellant's conviction for aggravated robbery under the law of parties.

### CONCLUSION

The court of appeals did not err when it affirmed Appellant's conviction for aggravated robbery because a rational jury could have inferred that the victim was threatened, that the victim perceived the threat, and that the victim was placed in fear as a result of the perceived threat. We affirm the judgment of the court of appeals.

---

[4]Johnson testified that there was approximately $200 in the cash register.

[5]*Olivas*, 203 S.W.3d at 345 (stating one definition of "threaten").

Hervey, J.

Delivered: October 9, 2013

Publish