

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00734-CV

**IN THE MATTER OF A.J.R.P.**

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2013JUV00669
Honorable Laura Parker, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:     Karen Angelini, Justice
              Sandee Bryan Marion, Justice
              Patricia O. Alvarez, Justice

Delivered and Filed:  July 16, 2014

AFFIRMED

A.J.R.P., a juvenile, appeals an order of adjudication and disposition in which A.J.R.P. was found to have engaged in delinquent conduct and was committed to the Texas Juvenile Justice Department. A.J.R.P. was charged with aggravated robbery and, in one issue on appeal, contends the evidence is legally insufficient to support the jury's verdict. We affirm.

## BACKGROUND

T.S., a high school student, was the victim of the aggravated robbery. He testified before a jury that, on the day of the robbery, he rode the school bus home. When he got off the bus in his neighborhood, he was listening to very loud music through headphones that were attached to his iPhone. According to T.S., he saw something unusual out of the corner of his eye. A.J.R.P. was following him, running and ducking behind a truck that was on the same side of the street that T.S.

was walking on. Because this was not A.J.R.P.'s usual bus stop, T.S. thought A.J.R.P. was running toward somebody else. T.S. got out his keys, and a couple of seconds after he saw A.J.R.P., he was hit on the back of his head. He blacked out and fell to the ground. T.S. testified that when he came to, he thought he was dead. His body was numb and he started yelling. He was in a lot of pain. A lady came from across the street to help him up. She called 911. T.S. noticed some scattered rocks on the ground. He then realized his phone was gone. When the police came, he was able to tell them that he thought A.J.R.P. had attacked him. A.J.R.P. was the only person on the street right before T.S. was attacked. At the time of the attack, T.S. was just two houses down from his own house. He testified that the pain in his head was the worst pain he had felt in his life. T.S. believed that A.J.R.P. used the rock to threaten him and to steal his iPhone. A couple of days later, he used a "find-a-phone" app and got a "ping" around the neighborhood where A.J.R.P. lives.

L.P., another student, testified that he exited the bus at the same time as T.S. and A.J.R.P. According to L.P., A.J.R.P. told him he wanted to get someone's iPhone. L.P. saw A.J.R.P. pick up a landscaping stone as he was walking behind T.S. At that point, L.P. turned around and went home. He heard a sound, but did not know what it was. He did not witness the robbery.

Several police officers responded to the scene of the robbery and testified at trial. Among those who testified was Officer Jonathan Kennedy of the Selma Police Department. Officer Kennedy testified that when he arrived at the scene, T.S. was injured and reported that someone had hit him. T.S. was treated by emergency technicians in an ambulance. Officer Kennedy and another officer found a broken rock and blood on the driveway where the robbery had occurred. Officer Donald Couser, also of the Selma Police Department, interviewed T.S. while he was being treated in the ambulance. He determined that T.S. had been assaulted by A.J.R.P. and that T.S.'s keys and cell phone had been stolen. Officer Keith Osborn, another Selma police officer, testified that on the evening of the robbery, he and another officer went to A.J.R.P.'s house and spoke with

A.J.R.P. and his mother. A.J.R.P. said that he and T.S. went to school together, rode the bus together, and were friends. A.J.R.P. said he had gotten off the school bus that day at his own bus stop and had not been in T.S.'s neighborhood that day. Officer Osborn, however, testified that he watched the bus video and it showed A.J.R.P. getting off the school bus at T.S.'s bus stop, not his own bus stop. The school bus driver, Daniel Jembarowski, confirmed that A.J.R.P. did not get off at his normal stop that day, which Jembarowski testified was unusual for him.

After hearing all the evidence, the jury found A.J.R.P. had engaged in delinquent conduct as charged by the State.

## DISCUSSION

Although juvenile proceedings are civil matters, the standard applicable in criminal matters is used to assess the sufficiency of the evidence underlying a finding the juvenile engaged in delinquent conduct. *In re R.R.*, 373 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *In re A.O.*, 342 S.W.3d 236, 239 (Tex. App.—Amarillo 2011, pet. denied). And, the Texas Court of Criminal Appeals has determined that the legal-sufficiency standard as enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), is the only standard that should apply in determining whether the evidence is sufficient to support each element that the State is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In a *Jackson v. Virginia* evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on

"cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.* We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

A.J.R.P. was charged with aggravated robbery under sections 29.02(a)(2) and 29.03(a)(2) of the Texas Penal Code. Section 29.02(a)(2) provides that a person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011). Section 29.03(a)(2) elevates the robbery to aggravated robbery if he uses or exhibits a deadly weapon. *Id.* § 29.03(a)(2).

A.J.R.P. contends that the evidence is legally insufficient to support the jury's verdict because no rational trier of fact could have found that he threatened the victim or placed him in fear of imminent bodily injury. A.J.R.P.'s argument is specifically based on the fact that the evidence shows the attack was unexpected and, thus, T.S. did not perceive a threat. Further, A.J.R.P. points to the evidence showing T.S. was struck in the back of the head and did not witness anybody coming up behind him to hit him. A.J.R.P. also focuses on T.S.'s statement that he thought A.J.R.P. was running toward someone else. In other words, according to A.J.R.P., because the blow to T.S.'s head was a surprise, there is no evidence A.J.R.P. threatened T.S. or placed him in fear before striking him on the back of the head and taking his iPhone.

A.J.R.P. suggests that it might have been more appropriate for the State to allege that he committed aggravated robbery by assault, as set forth in sections 29.02(a)(1) of the Texas Penal Code. That section provides that an offense is committed if, in the course of committing theft, the actor intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 29.02(a)(1) (West 2011). However, as A.J.R.P. points out, the sufficiency of the evidence

must be measured against the statutory element that was actually pleaded—in this case, aggravated robbery by threat or by placing in fear. *See Cada v. State*, 334 S.W.3d 766, 773-74 (Tex. Crim. App. 2011) (explaining that because sufficiency of evidence is measured by hypothetical jury charge as "authorized by the indictment," "if the State pleads one specific element from a penal offense that contains alternatives for that element, the sufficiency of the evidence is measured by the element that was actually pleaded, not any other statutory alternative element").

The State counters that the evidence is legally sufficient to show A.J.R.P. committed aggravated robbery by threat or by placing in fear because, although T.S. did not state he was in fear before he was attacked, he did testify that (1) he was aware A.J.R.P. was behind him and (2) he believed A.J.R.P. threatened him with a rock.

Because of the sudden nature of the attack from behind, we agree with A.J.R.P. that the evidence is insufficient to show A.J.R.P. placed T.S. in fear of imminent bodily injury or death. *See Howard v. State*, 333 S.W.3d 137, 140 (Tex. Crim. App. 2011) (holding robbery by placing in fear requires that (1) the defendant is aware his conduct reasonably certain to place someone in fear and (2) someone actually is placed in fear). Whether there is sufficient evidence of robbery by threat, however, is not easily answered.

The Texas Court of Criminal Appeals has considered, in several cases, the issue of whether a threat must be perceived by the victim in order to satisfy the threat element of the various statutes that criminalize threatening conduct. In *McGowan v. State*, 664 S.W.2d 355, 357-58 (Tex. Crim. App. 1984), the court of criminal appeals found the evidence insufficient to sustain a conviction for aggravated assault by threat where there was no evidence of any threat being made against the victim. In *McGowan*, the evidence showed the victim was stabbed in the back of the head while trying to help her daughter who was being attacked by the defendant. *Id.* at 357. In its discussion of the evidence, the court stated

> it is undisputed that [the mother] did not know what appellant struck her with. [The mother] was merely trying to pull her daughter away from appellant. There is no evidence that prior to stabbing her appellant threatened her in any way. She never saw appellant holding a knife nor did she testify that appellant threatened her with a knife. Finally, the evidence shows that after appellant stabbed [the mother], he fled. Thus, we are constrained to hold that the evidence is insufficient [ ] to show aggravated assault by threats even though it shows bodily injury.

*Id.* at 357-58.

One way to read the holding in *McGowan* is to conclude that, because the victim did not perceive a threat, there was insufficient evidence to sustain the conviction for aggravated assault by threat. However, a few years after *McGowan*, in *Olivas v. State*, 203 S.W.3d 341 (Tex. Crim. App. 2006), the court of criminal appeals clarified its holding in *McGowan* when it considered, again, the sufficiency of the evidence to sustain a conviction for assault by threat. The court discussed the definition of "threat." Because the word is not statutorily defined in the Texas Penal Code, the court looked to the dictionary definition. *Olivas*, 203 S.W.3d at 345. It noted that *Webster's Dictionary* defines "threaten" as:

1. to declare an intention of hurting or punishing; to make threat against;
2. to be a menacing indication of (something dangerous, evil, etc.); as the clouds *threaten* rain or a storm;
3. to express intention to inflict (injury, retaliation, etc.);
4. to be a source of danger, harm, etc. to.

*Olivas*, 203 S.W.3d at 345 (emphasis in original).

The *Olivas* court noted that "each of these definitions indicates an act being performed, as opposed to an act which is perceived by an outside party." *Id.* "Thus, these definitions indicate that a threat occurs, not when the victim perceived the threat, but as soon as the actor utters the threatening words or otherwise initiates the threatening conduct." *Id.* Then, after noting that *Black's Law Dictionary* defined "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property," the court found the "assault-by-threat" statute to be ambiguous. *Olivas*, 203 S.W.3d at 345-46. The court then considered other statutes that criminalize threatening

behavior. *Id.* at 346. In looking at the robbery-by-threat statute, the court noted that "[b]y defining robbery to be theft plus *either* threatening *or* placing another in fear, this statute demonstrates that the term 'threaten' means something other than placing a person 'in fear of imminent bodily injury or death.'" *Id.* (emphasis in original). Then, in looking at the terroristic-threat statute, the court explained that "[l]ike robbery by threat, this statute indicates that 'threaten' and 'place any person in fear of imminent serious bodily injury' have two distinct meanings.'" *Id.* According to the court, "[b]oth statutes imply that one can threaten without *necessarily* placing another in fear of imminent bodily injury." *Id.* (emphasis in original). "A logical inference from this is that 'threatening,' as used in the Penal Code, *does not require that the intended victim perceive or receive the threat*, but 'placing another in fear of imminent bodily injury' does." *Id.* (emphasis added).

The court then noted that some courts of appeals had too broadly construed *McGowan* "as holding that the Texas assault-by-threat and robbery-by-threat statutes require a victim to perceive a threat as it occurs–that is, the offense requires a successfully communicated threat." *Olivas*, 203 S.W.3d at 347. In clarifying what it meant in *McGowan*, the court of criminal appeals stated that *McGowan* "did not define assault by threat as requiring a victim's perception of the threat." *Olivas*, 203 S.W.3d at 348. Rather, according to the court, "it was the lack of *any* evidence, not the mother's lack of perception of a threat, that led this Court to conclude that the State failed to prove assault by threat." *Id.* at 349 (emphasis in original). Further, the court of criminal appeals stated, "a more accurate description of the holding in *McGowan* is that there must be *some* evidence of a threat being made to sustain a conviction of assault by threat." *Olivas*, 203 S.W.3d at 349 (emphasis in original). The court then noted that *McGowan* did not address the question of whether assault by threat requires an intended victim to perceive the threat. *Olivas*, 203 S.W.3d at 349. "That question remains open." *Id.* The court of criminal appeals then declined to resolve this open

question because it found that there was sufficient evidence in that case that the victim had, in fact, perceived a threat. *See id.* at 349-51.

The concurring opinion in *Olivas*, authored by Presiding Judge Keller and joined by two others, agreed with the majority's "*conclusion* that the assault statute does not require that the victim perceive the defendant's conduct for that conduct to constitute a 'threat.'" *Id.* at 351 (Keller, P.J., concurring) (emphasis added). However, the concurring opinion criticized the majority, noting "the Court gains nothing by stopping just short of making it a holding." *Id.* According to the concurring opinion, "it would be better simply to hold, as the Court almost does, that a threat need not be perceived in order to be a threat." *Id.* at 352.

Again, in *Schmidt v. State*, 232 S.W.3d 66, 67-68 (Tex. Crim. App. 2007), the court of criminal appeals considered the issue of whether a victim must perceive a threat and, once again, did not reach the issue left open by *Olivas*. As it had in *Olivas*, the court determined it need not decide the issues because there was ample evidence that the defendant communicated a threat to the victim. *Id.* at 68-69.

And, most recently, in *Boston v. State*, 410 S.W.3d 321, 322 (Tex. Crim. App. 2013), the court of criminal appeals again considered the issue of whether the victim of an aggravated robbery by threat must perceive a threat. In *Boston*, the court briefly reflected on its analysis and conclusion in *Olivas* that one could logically infer that the Texas Penal Code does not require the intended victim to perceive or receive the threat but, once again, declined to reach the issue, finding sufficient evidence that the victim perceived the defendant's threatening behavior. *Boston*, 410 S.W.3d at 326-27. Thus, the court of criminal appeals again left the issue open.

Turning to the evidence in the case before us, because of the suddenness of the attack, T.S. did not perceive a threat from A.J.R.P before he was hit in the back of the head. Thus, we must answer the question that the Court of Criminal Appeals left open—whether the Texas Penal Code

requires the victim of an aggravated robbery by threat to perceive the threat. We note that, although the court of criminal appeals has not directly and ultimately answered the question, the court has, in fact, given us some clear guidance. As noted above, the court concluded, and came just short of holding, that the victim does not have to perceive the threat. *Olivas*, 203 S.W.3d at 346. In light of this guidance, we hold that the Texas Penal Code does not require the victim of an aggravated robbery by threat to perceive the threat. That being said, we must then consider whether, in this case, there was evidence of a threat that was not perceived by T.S.

The evidence shows A.J.R.P. followed T.S. as he got off the school bus. Although this was the proper bus stop for T.S., it was not A.J.R.P.'s usual bus stop. The evidence further shows A.J.R.P. expressed to another student, L.P., his intent to take someone's iPhone and that A.J.R.P. then picked up a landscaping stone as he was following T.S. toward T.S.'s home. Further, as A.J.R.P. followed T.S., he was running and ducking behind a truck on the same side of the street that T.S. was on. T.S. was then hit on the back of the head with the landscaping stone. We find this evidence sufficient for the jury to conclude that A.J.R.P.'s behavior toward T.S. was threatening, despite T.S.'s failure to perceive such behavior as threatening.

Accordingly, we hold the evidence is sufficient to support the finding that A.J.R.P. engaged in delinquent conduct. We thus affirm the trial court's judgment.

Karen Angelini, Justice