# NO. 12-17-00407-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DEMETRIUS WHEELER,* *APPELLANT* | § | *APPEAL FROM THE 349TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HOUSTON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Demetrius Wheeler appeals his conviction for aggravated robbery with a deadly weapon. In three issues, Appellant challenges the sufficiency of the evidence to support his conviction and the denial of his motion for a directed verdict. We affirm.

### BACKGROUND

On December 17, 2015, Kristi Rich was working as a teller at Lovelady State Bank (the Bank) when she saw a car pull up to the Bank and three men exited the vehicle. She saw one of the men carrying a gun. She ducked down behind the counter, in an attempt to leave, when one of the men jumped over the counter and began striking her with his gun and attempting to drag her to the vault. The man dropped Rich when he observed another employee, Dawn Coward, on the phone. The man pulled the phone out of Coward's hand, placed the gun in her face, and demanded money. The man hit Coward on the head with the butt of the gun and pulled her to the teller counter. Coward complied with the man's request and began putting money in the bag from the register drawers. When Coward told him that she did not have access to the vault, the man jumped back over the counter and left the Bank.

The Bank's vice president, David Whittlesey, was threatened at gunpoint and forced to lie on the ground during the robbery. When the men fled, Whittlesey ran outside and saw the men

leave in a dark, four-door vehicle. He got into his own vehicle and attempted to pursue the men but was unable to locate the vehicle he saw leave the Bank. However, he saw a small red vehicle pull out from a side road and begin to drive slowly. Whittlesey opined that the men switched vehicles and were now in the red vehicle. He relayed all of this information to the 911 operator from his cell phone.

The red vehicle eventually stopped, and the men fled from the vehicle. One man was apprehended by law enforcement when he became tangled in a fence. That man was interviewed, and evidence was collected from the scene. Following an investigation, Appellant was arrested and charged by indictment with aggravated robbery. Appellant pleaded "not guilty" and the matter proceeded to a jury trial.

The State argued Appellant was not one of the men who physically robbed the bank, but he was involved in the planning and getaway of the robbery. Following the conclusion of evidence, Appellant moved for a directed verdict, which the trial court denied. The jury found Appellant "guilty." After a punishment hearing in which Appellant pleaded "true" to the indictment's enhancement allegation, the trial court sentenced Appellant to forty-five years imprisonment. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Appellant contends the evidence is legally insufficient to support his conviction. Specifically, he argues that the evidence does not prove that he participated in the aggravated robbery or that he used or exhibited a deadly weapon. In his third issue, Appellant argues the trial court erred in denying his motion for directed verdict.

**Standard of Review**

In Texas, the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 316–17, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See*

*id.*, 443 U.S. at 319, 99 S. Ct. at 2789. The evidence is examined in the light most favorable to the verdict. *Id.* A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982). This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we defer to the factfinder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks*, 323 S.W.3d at 899–900. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A challenge to the trial court's ruling on a motion for directed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). As a result, we will address Appellant's first, second, and third issues together.

**Applicable Law**

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011). The offense is aggravated if the person committing the robbery uses or exhibits a deadly weapon. *Id*. § 29.03(a)(2) (West 2011). A "deadly weapon" constitutes (1) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (2) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id*. § 1.07(a)(17) (West Supp. 2018).

A person is responsible for the criminal conduct of another person if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id*. § 7.02(a)(2) (West 2011). When a party is not a "primary actor," the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Williams v. State*, No. 05-14-00790-CR, 2016 WL 355115, at *6 (Tex. App.—Dallas Jan 28, 2016, no pet.) (mem. op., not designated for publication) (citing *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985)). The jury may consider "events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996); *see also Williams*, 2016 WL 355115, at *6. "Since an agreement between parties to act together in a common design can seldom be proved by words, the State often must rely on the actions of the parties, shown by direct or circumstantial evidence, to establish an understanding or common design to commit the offense." *Williams*, 2016 WL 355115, at *6 (quoting *Miller v. State*, 83 S.W.3d 308, 314 (Tex. App.—Austin 2002, pet. ref'd)). Circumstantial evidence may suffice to show the defendant is a party to the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012); *Ransom*, 920 S.W.2d at 302; *Miller*, 83 S.W.3d at 314. Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement. *Ransom*, 920 S.W.2d at 302. Mere presence of an accused at the scene of an offense is not alone sufficient to support a conviction under penal code Section 7.02(a)(2); "however, it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant." *Williams*,

4

2016 WL 355115, at *6 (quoting *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.] 1981) (op. on reh'g)). "[W]hile flight alone will not support a guilty verdict, evidence of flight from the scene of a crime is a circumstance from which an inference of guilt may be drawn." *Id*. (quoting *Valdez*, 623 S.W.2d at 321).

"With respect to party liability for the use or exhibition of a deadly weapon as an element of aggravated robbery, there must be evidence that the defendant not only participated in the robbery before, while, or after a deadly weapon was displayed, but did so while being aware that the deadly weapon would be, was being, or had been used or exhibited during the offense." *Id*. at *7 (quoting *Boston v. State*, 373 S.W.3d 832, 839 n.7 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013)). Our sufficiency review is not limited to evidence that the defendant knew in advance the deadly weapon would be used or exhibited during the robbery. *Id*. Rather, "the pertinent question is whether there is evidence [the defendant] not only participated in the robbery before, while, or after a deadly weapon was displayed, but did so while being aware that the deadly weapon would be, was being, or had been used or exhibited during the offense." *Id*.

## Analysis

Appellant does not dispute that a robbery occurred at Lovelady State Bank on December 17, 2015. Rather, he argues that the evidence does not prove that he participated in the robbery. He further argues that the evidence is insufficient to show that a firearm was used or exhibited during the course of the robbery, which is a necessary element of an aggravated robbery, because the word "gun" is broader than the word "firearm."[1]

Steven Jeter, a sergeant with the Texas Rangers, testified that he was called to assist in the investigation of the bank robbery in Lovelady. When he received the phone call, local law enforcement was in pursuit of the suspects. Ranger Jeter responded to a location in which a suspect had been apprehended after fleeing the vehicle. When he arrived, Ranger Jeter first looked at the red car before proceeding to where the individual had been captured. In the red vehicle, Jeter observed a large paper clip, a couple of rubber bands, and a $250 money band. Because Jeter worked for ten years at a bank, he testified that he understood that banks do a lot of their work with big paper clips and rubber bands. Jeter then spoke with the captured suspect; however, he

---

[1] Appellant does not challenge the sufficiency of the evidence to show his awareness that a deadly weapon would be, was being, or had been used or exhibited during the offense.

testified that his primary responsibility during the investigation was working the crime scene. While searching for evidence, Jeter collected a duffle bag full of masks, gloves, and guns that he believed were used in the robbery. This included a .40 caliber handgun and a 9-millimeter handgun. Jeter testified that both guns were loaded to near capacity with a round in the chamber. Jeter testified that he obtained DNA evidence from all of the suspects, including Appellant. However, Ranger Jeter was unable to obtain any usable fingerprints from the vehicle or the items contained within it.

Jessica Ehmann, a forensic scientist with the Texas Department of Public Safety crime laboratory, testified that Appellant's DNA was found on a washrag from the right rear floorboard of the vehicle and the water bottle from the vehicle's center console.

Nelson Huffman, a deputy with the Trinity County Sheriff's Department, responded to the pursuit of the suspects following the bank robbery. After he received the call to respond, he learned that the suspects changed cars. Approximately five miles outside of Trinity, the suspects got into a red car. Deputy Huffman then pulled behind a red car to confirm the suspects matched the description given to him. Once the occupants of the vehicle noticed him, they accelerated, and Deputy Huffman pursued them. While Deputy Huffman was following them, the suspects stopped the car and began running down the street. Three suspects ran through a field. One of the suspects, Allus Hubbard, became caught in a fence and was apprehended.

Andreia Castle, Appellant's girlfriend at the time of the robbery, testified that she owned a red Dodge Dart and frequently allowed Appellant to drive it. Castle further testified that Appellant asked to use her car the morning of the robbery. She did not get her car back that day. Appellant told her "he was sorry, he didn't mean for it to happen that way." Appellant also asked Castle to report her car as stolen. Castle testified that she reported her car as stolen and that she lied when she filed that report. Appellant never told her that her vehicle had been involved in a bank robbery; however, he apologized because her car had been in a situation. Castle testified that she learned what happened from Appellant's cousin.

Hubbard testified that he was involved in the aggravated robbery of Lovelady State Bank on December 17, 2015. According to Hubbard, his cousin, Alonso Irving, asked him to go to Lovelady that morning. Hubbard believed they were going to "go get some marijuana from somebody." Irving took Hubbard to Trinity, Texas, where they met three men. This is when Hubbard learned they were going to rob a bank. Appellant was one of those men and was driving

6

a red Dodge Dart. A man named Ryan Scott got into the car with Hubbard and Irving, and the three men drove to Lovelady State Bank. Hubbard further testified that he carried a gun with him, a "chrome Smith and Wesson." He also testified that both Irving and Scott used guns during the robbery, but he did not know the types of guns they used. However, he was able to identify the guns in the exhibit photographs at trial. Hubbard explained that when the three men left the bank, they were followed. As a result, they pulled over to the side of the road where the red Dodge Dart was waiting for them. While in the red car, Appellant told them that he believed they were going to get pulled over. Appellant stopped the car and the men fled. Hubbard took the black bag from the car with him when he fled and dropped it in the field. While running, Hubbard's kidney "failed" and he was caught by law enforcement.

Based on the foregoing evidence, the jury could reasonably conclude that the three men who entered Lovelady State Bank exhibited firearms during the course of the robbery. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A). Two firearms, a .40 caliber handgun and a 9-millimeter handgun, were found by law enforcement at the scene where Hubbard was apprehended. Furthermore, Hubbard testified that he, Scott, and Irving all had firearms in their possession at the time of the robbery. Photographs of the firearms, along with the firearms themselves, were entered into evidence for the jury's review.

The jury could have also reasonably concluded that Appellant's actions showed an understanding and common design to commit the offense of aggravated robbery. *See **Ransom***, 920 S.W.2d at 302; *see also **Williams***, 2016 WL 355115, at \*6. Hubbard testified that he met Appellant when he went to Trinity with his cousin and learned the men were going to rob a bank. Hubbard further identified Appellant as the man who drove the red car in which the men fled from law enforcement. Appellant, however, argues that Hubbard's testimony is insufficient on its own to support a conviction under Article 38.14 of the Texas Code of Criminal Procedure.

Article 38.14 provides that a conviction cannot be had upon the testimony of an accomplice unless it is corroborated with other evidence tending to connect the defendant with the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). In the present case, Castle testified that Appellant used her car the day of the robbery, repeatedly apologized to her about her car being involved in a "situation," and instructed her to report the vehicle as stolen. *See **Cary v. State***, 507 S.W.3d 750, 758 (Tex. Crim. App. 2016) (jury entitled to infer intent from accused's actions before, during, and after the offense); *see also **Cueva v. State***, 339 S.W.3d 839, 881-82 (Tex.

7

App.—Corpus Christi 2011, pet. ref'd) (any conduct by someone "accused of a crime subsequent to its commission, which indicates a consciousness of guilt may be received as a circumstance tending to prove that he committed the act with which he is charged"). In addition, Appellant's DNA was found on both a water bottle, which was located in the vehicle's center console, and washrag found in the red car. The jury could further infer guilt from evidence that all passengers of the red vehicle fled on foot when pursued by law enforcement officers. *See Clayton*, 235 S.W.3d at 778 (jury's duty includes drawing reasonable inferences from basic facts to ultimate facts); *see also Williams*, 2016 WL 355115, at *6. Accordingly, Appellant's conviction does not stand on Hubbard's testimony alone and the evidence is sufficient to show that Appellant, with intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid the other men to commit the offense of aggravated robbery. *See* TEX. PENAL CODE ANN. § 7.02(a)(2).

Thus, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Appellant assisted in the commission of the aggravated robbery. And, the trial court properly denied Appellant's motion for directed verdict. *See id.* §§ 7.02(a)(2); 29.03(a)(2); *see also Brooks*, 323 S.W.3d at 912. We overrule Appellant's three issues.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered November 14, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 14, 2018**

**NO. 12-17-00407-CR**

**DEMETRIUS WHEELER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 349th District Court

of Houston County, Texas (Tr.Ct.No. 16CR-042)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*