**Opinion filed August 20, 2020**



# In The

# Eleven Court of Appeals

_____

## No. 11-18-00206-CR
_____

## GARY SHANE BIEN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 27513A**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Gary Shane Bien, of aggravated robbery. Appellant pleaded "true" to a prior felony conviction alleged for enhancement purposes, and the trial court thereafter assessed his punishment at imprisonment in the Institutional Division of the Texas Department of Criminal Justice for a term of twenty-five (25) years. In a single issue, Appellant challenges the legal sufficiency of the evidence supporting his conviction. We affirm.

## I. *Factual Background*

On September 5, 2017, Appellant sold some scrap metal to A-1 Core and Metals (A-1), a salvage recycling center in Abilene, Texas. James Burch, an employee of A-1, was involved in this scrap metal purchase on behalf of A-1. On September 6, 2017, at approximately 4:50 p.m., A-1 was robbed. At the time, Burch was the only A-1 employee present at the business. According to Burch, the robber wore a mask and was armed with a revolver when he entered A-1. The robber brandished the revolver and demanded A-1's "black money bag" and the keys to Burch's vehicle. Burch produced the black money bag, but not the keys to his vehicle. The robber thereafter fled on foot.

Burch described the robber as a person of "medium build," approximately 5′7″ or 5′8″ in height. The robber wore a long-sleeved black shirt, pants, gloves, and a red Scream mask with a hood. Burch acknowledged that he told an officer that the robber's voice "sounded Black or African American." Nevertheless, Burch was emotionally charged from the event when he advised law enforcement of his account of the robber's voice. It was Burch's belief that the robber was a previous customer of A-1 because only someone familiar with A-1's business would know to ask for "the black money bag."

Daniel Ramon lives near A-1. On the morning of the robbery, he noticed a suspicious vehicle being driven throughout the neighborhood. Ramon testified that the vehicle was moving slowly and in a repetitive pattern and that it did not belong to any of his neighbors. Ramon stated the person driving the vehicle was a female with dark brown hair. Ramon also believed that the driver was Hispanic. Ramon observed the vehicle eventually stop. A white male then exited and eventually reentered the vehicle. Ramon described the vehicle as a dark gray Impala with a dent in one of the doors. Later that day, Ramon saw a white male sprinting away from A-1 in the direction of the railroad tracks, carrying something "[k]inda maybe

like a football." According to Ramon, the white male was tall and wore a long-sleeved black shirt.

Jesse Tonche, a resident of the same neighborhood, noticed a "suspicious" person in the area on the morning of the robbery. Tonche described this person as a white male with short hair; this person was also wearing a black shirt. Tonche testified that this white male appeared suspicious because he stopped halfway down the street and then made a U-turn and because pedestrians were usually not seen on this street that early in the morning. Tonche observed this white male borrow a cell phone from a truck driver who had parked at a business across the street from A-1. Later that morning, Tonche noticed an unfamiliar vehicle parked in a lot near his residence. According to Tonche, the parked vehicle was a gray or green Impala with a dent in the driver's side door. Tonche described the driver of this vehicle as being a slender Hispanic female with long hair.

Russell Sullivan, a truck driver for Southeastern Freight, stopped at a business located at North 3rd and Cottonwood on the morning of September 6, 2017. Sullivan testified that a man eventually approached him and asked to borrow his cell phone. Sullivan described the man as being a white male in his early 30s with short hair. The man was wearing pants and a dark-colored shirt with "a longer short sleeve or . . . half sleeve." After being presented a photo lineup by the investigating officers, Sullivan identified Appellant as the person who requested to use his cell phone.

Eddie Rodriguez, another neighborhood resident, testified that he was at his home between the hours of 4:30 and 5:30 p.m. on the day of the robbery. During that time period, Rodriguez noticed a female driving a "silver gray" Impala around the neighborhood. The Impala also had a dented driver's side door. Rodriguez testified that the driver was acting nervously as if she was "waiting on somebody." When shown a photograph of Ericha Sanchez at trial, Rodriguez testified that the

3

driver looked similar to the person in the photograph. Rodriguez later observed a man in jeans and a black shirt, holding something similar to a football in his hand, running down North 5th Street toward the Impala, and yelling, "Open the f-----g door, open the f-----g door." Once inside the Impala, the man yelled, "Go, go, go," and the Impala sped away.

Sergeant Michael Baird of the Abilene Police Department responded to the robbery call. His investigation revealed that the gray Impala with the dent in the driver's side door was registered to Anthony Sanchez, Ericha Sanchez's brother. According to Sergeant Baird, Ericha had an ongoing relationship with Appellant, and they had children together. Although Sergeant Baird eventually spoke to Ericha and Appellant, his investigation determined, in part, that information about the mask worn by the robber had been withheld. As a result, Sergeant Baird obtained a search warrant for Ericha's residence. The search warrant was executed on September 13, 2017, but no evidence was located or seized.

Officer Jeremiah Torrez of the Abilene Police Department assisted Sergeant Baird with the robbery investigation. Officer Torrez testified that he listened to the audio recordings of Appellant's jail telephone calls. At trial, Officer Torrez identified the voices of Appellant, Ericha, and a third individual (who was identified as Appellant's mother) from the audio recording of one such call. During this recording, Appellant and his mother discussed the use of a mask during the A-1 robbery. This particular discussion between Appellant and his mother occurred before any details of a mask were released to the public by the Abilene Police Department.

## II. *Standard of Review – Sufficiency of the Evidence*

In his sole issue, Appellant contends that the evidence presented at trial is legally insufficient to support his conviction for aggravated robbery. Specifically, Appellant claims that the evidence was insufficient to prove he was the "robber."

4

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

## III. *Analysis*

A grand jury indicted Appellant for the offense of aggravated robbery with a deadly weapon. "A person commits the offense of robbery if, in the course of committing theft, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Boston v. State*, 410 S.W.3d 321, 322 n.1 (Tex. Crim. App. 2013); *see* TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2019). The offense becomes an aggravated first-degree felony if the person uses or exhibits a deadly weapon during the commission of the robbery. PENAL § 29.03(a)(2), (b).

Appellant asserts that the evidence presented at trial is legally insufficient to prove, beyond a reasonable doubt, that he was the person who committed the aggravated robbery. Interestingly, Appellant does not challenge that an offense was committed. Rather, Appellant's evidentiary complaints primarily focus on the robber's identity and the State's inability to establish Appellant's connection to the offense. As such, Appellant contends that (1) his presence in the area of the robbery

6

and connection to Ericha are "tenuous" at best and do not prove his identity as the robber, (2) the testimony describing and identifying him as the robber is conflicting and cannot support the jury's verdict of guilt, (3) the communications with his family about the "mask" do not prove his identity as the robber, and (4) the cumulative effect of witness testimony and other admitted evidence is incapable of convincing a rational trier of fact of his guilt. Based on the record before us, we disagree.

Appellant asserts that his presence in the vicinity of the robbery and his connection to Ericha do not link him to this crime. Nevertheless, the evidence presented at trial does not support his contention. Appellant sold scrap metal to A-1 the day before the robbery. Certainly, a rational jury could infer that this encounter alerted Appellant to the presence of the black bag of money that was forcibly removed from A-1. Ramon, Tonche, and Rodriguez observed a white male matching Appellant's physical description, and wearing clothing similar to that of the robber, in their neighborhood and the area of A-1 during the morning and afternoon hours of September 6, 2017. The same white male borrowed a cell phone from Sullivan, who subsequently identified Appellant as this person after viewing a properly assembled photo lineup. Ramon, Tonche, and Rodriguez also testified to the presence of a "suspicious" vehicle in their neighborhood and the area where A-1 was located, during the morning and afternoon hours of September 6, 2017. The vehicle, identified as a gray Impala with a dented door, was driven by Ericha and registered to her brother. Rodriguez testified that he later saw a white male, who was wearing clothing similar to the robber and carrying an object like a football, hurriedly enter the vehicle and scream at the driver to "open the f-----g door" and to "[g]o, go, go." Moreover, Appellant and Ericha were known to be in a dating relationship.

In this instance, Appellant was identified as being in the vicinity of the robbery. Because of his prior business dealings with A-1, Appellant was presented

with the opportunity to become aware of the black money bag's existence. Appellant had a known dating relationship with the driver of the get-away vehicle (Ericha), and his physical description as the robber was verified by several witnesses.

Appellant also asserts that the testimony describing and identifying him as the robber, including his height and race, is conflicting, such that "speculation [was] required" for the jury to find him guilty. Granted, witness descriptions of Appellant's height varied. However, witnesses viewed Appellant from a variety of distances. Also, Burch's statement and description of the robber's voice as possibly being that of a person who was "Black or African-American" was made by him while in an excited and emotional state. We note that, with respect to the evidence Appellant asserts is conflicting, the applicable standard of review requires that we presume the jury resolved the conflicts in favor of the verdict, and we defer to the jury's determination on this issue. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Indeed, the jury may accept or reject all, some, or none of a witness's testimony. As such, it is the jury's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. It is not our role or function to engage in or make credibility determinations. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778; *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003).

Next, Appellant asserts that his communications and discussions with his family regarding the use of a mask during the robbery is not sufficient evidence of identity. We disagree. To support this contention, Appellant argues that an article published on September 26, 2017, provided facts about this offense to the community at large, including the use of a mask during the commission of the offense. However, the recorded jail telephone call between Appellant, Ericha, and Appellant's mother, whereby they discussed the use of a mask during the robbery, occurred on September 18, 2017, some eight days prior to the article's publication.

Even if the article was an "updated" story, as Appellant suggests, any conflict in the trial testimony is presumed to have been resolved by the jury in favor of the verdict. Moreover, Sergeant Baird and Officer Torrez stated that the use of a mask was not disclosed to the public until September 26, 2017. Thus, this significant fact could not have been within the public domain when Appellant, Ericha, and Appellant's mother discussed the use of the mask during their September 18, 2017 jail telephone call.

Finally, Appellant asserts that the cumulative effect of all the evidence is not legally sufficient to identify him as the robber. Again, we disagree. To the contrary, the cumulative weight and force of the evidence, and all the incriminating circumstances, are legally sufficient to support the jury's verdict that Appellant committed the offense of aggravated robbery.

## IV. *Conclusion*

The identity and culpability of a person can be established by direct or circumstantial evidence, and the reasonable inferences to be derived from such evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). We have reviewed the evidence in the light most favorable to the jury's verdict. Here, irrespective of Appellant's claim (with which we disagree) that no direct evidence exists linking him to the charged offense, we agree with the State and hold that the record before us contains sufficient circumstantial evidence from which a rational factfinder could have logically inferred and found beyond a reasonable doubt that Appellant was the robber. Accordingly, because sufficient evidence supports Appellant's conviction for aggravated robbery as charged in the indictment, we overrule Appellant's sole issue on appeal.

## V. *This Court's Ruling*

We AFFIRM the judgment of the trial court.


W. STACY TROTTER

JUDGE


August 20, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Wright, S.C.J.,[1] and Judge Trotter.[2]

Stretcher, J., and Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.

[2]The Honorable W. Stacy Trotter, 358th District Court, Ector County, Texas, sitting by assignment.