

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-21-00360-CR

Kevin Jason **GONZALES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2020CR0029
Honorable Michael E. Mery, Judge Presiding

Opinion by:      Rebeca C. Martinez, Chief Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Irene Rios, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: March 22, 2023

AFFIRMED

A jury convicted appellant Kevin Gonzales of one count of robbery, a second-degree felony enhanced by a prior adjudication for delinquent conduct constituting a felony offense, and the trial court assessed punishment at confinement for forty years in the Texas Department of Criminal Justice and a fine of ten thousand dollars. *See* TEX. PEN. CODE ANN. §§ 29.02, 12.42(f). In four issues, Gonzales contends that: (1) the evidence is insufficient to support his conviction for the offense of robbery; (2) the trial court erred in refusing his jury-charge request for the lesser-included offense of theft; (3) the trial court erred in admitting scientifically unreliable fingerprint

analysis; and (4) the trial court erred in admitting his fingerprints from a prior criminal proceeding. We affirm.

## I. BACKGROUND

The jury considered the testimony of, among others, Mehru Lalani, a store clerk, and Shannon Standifer, a latent fingerprint examiner with the San Antonio Police Department.

Lalani testified that, on August 15, 2019, she was working as a cashier at Mariposa Groceries. On that afternoon, months before the COVID-19 pandemic, Lalani noticed a man with tattoos on his arm and hand enter the store while wearing a bandana that covered his face. The man's masked appearance immediately raised Lalani's suspicion. The man approached Lalani, "banged on the lottery box," and exclaimed to her, "give me money, give me money." Lalani described the man's voice as "strong" and "demanding" and how she felt "scared" and "truly terrified." Lalani testified that in that moment she thought he might have a weapon and "he's going to hurt me." Lalani then put her hands up and gave the man approximately two-hundred dollars that was kept underneath the counter but outside of the cash register. The man responded by telling her, "open the register and give me the money." Lalani complied by opening the cash register and giving the man money from it.

Standifer testified that she aided the investigation through fingerprint analysis. Standifer identified State's Exhibit 9 as a latent print that was "lifted" from the front door of Mariposa Groceries. Before trial, Standifer, in accordance with a court order, took a fingerprint sample from Gonzales. This sample was marked as State's Exhibit 10. The trial court admitted, without objection, State's Exhibits 9 and 10. On examination by the State, Standifer testified:

STATE: I want to clarify that State's Exhibit 9 were the latent prints lifted at the scene, correct?

STANDIFER: Yes.

STATE:    And State's Exhibit 10 was a print that you did this morning of the defendant you identified, correct?

STANDIFER:    Yes.

STATE:    And from those you said that the right thumb and the right palm matched the interior top left door; is that correct?

STANDIFER:    Yes.

The State also questioned Standifer on State's Exhibits 11, 12, and 13, which were purportedly Gonzales's fingerprints that had been extracted from a Texas Department of Public Safety database. Gonzales objected to these three exhibits on hearsay grounds. Thereafter, the State did not urge their admission, and the trial court did not admit them into evidence.

The jury convicted Gonzales on one count of robbery, a second-degree felony enhanced by a prior adjudication for delinquent conduct constituting a felony offense. The trial court assessed punishment at confinement for forty years in the Texas Department of Criminal Justice and a fine of ten thousand dollars. Gonzales timely appeals from his judgment of conviction and sentence.

## II. DISCUSSION

### A.    Sufficiency of the Evidence

In Gonzales's first issue, he contends that the evidence is insufficient to support his conviction for the offense of robbery.

#### 1.    Standard of Review

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). *See Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015).

An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, a court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally. *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

A court conducting a sufficiency review must consider the cumulative force of all the evidence, even evidence not properly admitted. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). Additionally, direct and circumstantial evidence are equally probative, and circumstantial evidence alone can be sufficient to establish guilt. *Nowlin*, 473 S.W.3d at 317.

"The trier of fact is the exclusive judge of the credibility and weight of the evidence and is permitted to draw any reasonable inference from the evidence so long as it is supported by the record." *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015). We must defer to its determinations. *Nowlin*, 473 S.W.3d at 317. However, inferences based on mere speculation are not sufficient to support a criminal conviction. *Ramsey*, 473 S.W.3d at 809.

### 2. Applicable Law

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PEN. CODE ANN. § 29.02. A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. *Id*. at § 31.03(a).

Gonzales references *Boston v. State*, 410 S.W.3d 321 (Tex. Crim. App. 2013), and *Brown v. State*, No. 13-19-00276-CR, 2020 WL 5052762 (Tex. App.—Corpus Christi-Edinburg July 30, 2020, no pet.) (mem. op., not designated for publication), in support of his first issue. In *Boston*,

a convenience store robber and his accomplice were tried on one count of aggravated robbery. *Boston*, 410 S.W.3d at 322.  The store clerk, according to the Texas Court of Criminal Appeals, testified:

> that she did not realize that [the robber] had a firearm until she saw the video of the robbery.  She also testified that she was "very upset" and "shocked" during the robbery.  When asked if [the accomplice] threatened her, she stated that the robbers "didn't say anything."  When asked if she perceived [the robber's] actions as threatening, [the clerk] stated that putting a firearm on the counter is threatening behavior, but she conceded that she never saw the firearm.  She also testified that, during the robbery, she feared that she could be injured, perhaps seriously, and that she would not have run outside after [the accomplice] and [the robber] if she knew that they had a firearm.

*Id*.  A jury convicted the accomplice under the law of parties, and the Texas Court of Criminal Appeals affirmed the conviction.  *Id*. at 323, 327.  The court explained the distinction between when a robber *threatens* a person with imminent bodily injury or death and when a robber *places a person in fear* of imminent bodily injury or death.  Specifically,

> [R]obbery-by-placing-in-fear does not require that a defendant know that he actually places someone in fear, or know whom he actually places in fear.  Rather it requires that the defendant is aware that his conduct is reasonably certain to place someone in fear, and that someone actually is placed in fear.

*Boston*, 410 S.W.3d at 325 (quoting *Howard v. State*, 333 S.W.3d 137, 140 (Tex. Crim. App. 2011)).  Alternatively,

> [O]ne can threaten without *necessarily* placing another in fear of imminent bodily injury.  A logical inference . . . is that "threatening," as used in the Penal Code, does not require that the intended victim perceive or receive the threat, but "placing another in fear of imminent bodily injury does."

*Boston*, 410 S.W.3d at 326 (quoting *Olivas v. State*, 203 S.W.3d 341, 346 (Tex. Crim. App. 2006)).

In *Brown*, the appellant was convicted on two counts of aggravated robbery of a store. 2020 WL 5052762, at *1.  On appeal, the appellant argued that because the store clerk did not testify, there is insufficient evidence that he was actually placed in fear or that he perceived a threat

of imminent bodily injury or death during the robbery. *Id*. at *3. The Thirteenth Court of Appeals disagreed, writing that:

> Although [the store clerk] refused to testify regarding any specifics of the robbery, he acknowledged under oath that he was in the robbery surveillance video. The video showed [the store clerk] pacing, rubbing his face, and placing his hands on his head. The video also shows [the store clerk] opening the safe with [the accomplice] nearby, holding a firearm.

*Id*. (footnote omitted).

### 3. Analysis

Generally, Gonzales argues that the evidence is insufficient to support a finding that he intentionally or knowingly threatened or placed Lalani in fear of imminent bodily injury or death. Specifically, Gonzales argues that the evidence is insufficient because "he only banged his hand on the counter or next to a display next to the count[er]. He uttered no threatening words. He did not reach into the cash register. He only demand[ed]" money. We disagree. Lalani, similar to the clerk in *Boston*, 410 S.W.3d at 323, testified that she was "scared" and "truly terrified" by Gonzales's words and actions, which included banging on the lottery box and demanding money from the cash register in a "strong" voice. Gonzales's implicit contention that "threatening words" are required is not supported by *Brown*, 2020 WL 5052762, at *3, a case in which the store clerk refused to testify regarding the robbery specifics. *Id*. Viewing the evidence in the light most favorable to the verdict, we conclude a rational fact finder could have found beyond a reasonable doubt that Lalani was fearful and perceived a threat of imminent bodily injury or death. TEX. PEN. CODE ANN. § 29.02. We overrule Gonzales's first issue.

### B. Lesser-Included Offense

In Gonzales's second issue, he contends that the trial court erred in refusing his jury-charge request for the lesser-included offense of theft.

### 1. Standard of Review and Applicable Law

We conduct a two-part *Aguilar/Rousseau* analysis to determine whether the trial court was required to provide the jury with an instruction on a requested lesser-included offense. *See Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985); *see also State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013); *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012).

First, we must determine as a matter of law whether the requested instruction is indeed a lesser-included offense of the offense charged, using the "cognate-pleadings" approach. *Meru*, 414 S.W.3d at 162; *Cavazos*, 382 S.W.3d at 382. Gonzales and the State agree that theft is a lesser included offense of robbery. *See Earls v. State*, 707 S.W.2d 82, 84–85 (Tex. Crim. App. 1986) ("[t]heft, by whatever method committed," is a lesser-included offense of robbery, when the indictment alleges that the defendant committed a violent act in the course of committing theft); *see also Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998) (finding theft to be a lesser-included offense of robbery).

Second, we must review the evidence presented at trial and determine whether there is any evidence in the record that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser offense. *See Meru*, 414 S.W.3d at 162–63; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). In making this determination, we should not consider whether the evidence presented was "credible, controverted, or in conflict with other evidence." *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). "[A]nything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge on a lesser offense." *Cavazos*, 382 S.W.3d at 385; *see also Meru*, 414 S.W.3d at 163.

### 2. Analysis

In Gonzales's brief, he argues that:

> [T]he lesser included offense of theft must have been given to the jury. Without the lesser included offense, the jury was forced to decide the defendant was not guilty or did some bad act by taking the money from the clerk while banging his hands on the counter. His behavior certainly wasn't mundane by any means, but was it enough to amount to a robbery, is the question. The jury had no middle ground on which to place their doubts. Therefore, the denial of the jury charge created harm, because the jury's hand was forced to make the only decision available by which to punish the Appellant for his behavior. Indeed, due to the amount of money taken, the jury could have held Appellant guilty of Theft of $200, a Class B misdemeanor, if they wanted to punish him, but not to the extent of punishing him to the extent of prison for 40 years.

The State contends that Gonzales's second issue fails because "there was no affirmative evidence presented at trial from which a rational jury could have found that if [Gonzales] was guilty, he was guilty only of theft, and not robbery."

A rational jury could only have found Gonzales guilty upon concluding that Lalani parted with the money only because of Gonzales's demands, which caused Lalani to become "scared" and "truly terrified." If Gonzales unlawfully appropriated the money, it was only because he intentionally or knowingly threatened or placed Lalani in fear of imminent bodily injury or death. *See* TEX. PEN. CODE ANN. §§ 29.02, 31.03(a). In other words, on this record, if Gonzales committed theft, he also committed robbery. *See id.* Gonzales has not directed us — and we cannot find — any evidence in the record that would permit a rational jury to find that if Gonzales is guilty, he is guilty only of the lesser offense of theft. *See Meru*, 414 S.W.3d at 162–63. Therefore, we overrule Gonzales's second issue.

### C. Fingerprint Evidence

In Gonzales's third and fourth issues, he contends that the trial court erred in admitting scientifically unreliable fingerprint analysis and his fingerprints from a prior criminal proceeding. At times, Gonzales couches these contentions as a violation of the Confrontation Clause. The

State responds by arguing that Gonzales failed to preserve these alleged errors for appellate review. Gonzales does not direct us to — and we cannot find — any part of the record wherein he lodged an objection that comports with his third and fourth issues. Indeed, Gonzales lodged no objection to the State's examination of Standifer wherein she linked him to State's Exhibits 9 and 10. "An objection stating one legal theory [at trial] may not be used to support a different legal theory on appeal." *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (quoting *Johnson v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990); *see also Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (holding that defendant failed to preserve Confrontation Clause complaint for appellate review when trial objection was solely on hearsay grounds). We conclude that Gonzales failed to preserve his third and fourth issues. Accordingly, we overrule Gonzales's third and fourth issues.

### III. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH